**Harold D. L. HENDERSON, Petitioner,**

v.

**Dr. George J. BETO, Director, Texas Department of Corrections, Respondent.**

**Civ. A. No. 2–790.**

United States District Court,
N. D. Texas,
Amarillo Division.

Feb. 16, 1970.

and Respondent's answer was filed on December 8, 1969. A supplemental petition, clarifying ambiguities in the original petition was filed on December 15, 1969. Petitioner, on January 8, 1970, filed pleadings traversing Respondent's answer.

The record indicates that petitioner is in custody of the Texas Department of Corrections pursuant to judgment and sentence of the 47th District Court of Potter County, Texas, in Cause No. 13340. The conviction was by a jury for the felony offense of burglary with a prior felony offense less than capital of like character. As a result of this conviction, petitioner was sentenced to confinement in the State penitentiary for twelve (12) years on February 9, 1967.

Petitioner asserts the following grounds for relief in his petition for writ of habeas corpus:

(1) That he was illegally arrested because the arresting officers had no probable cause to arrest him.

(2) That he was illegally searched and evidence illegally seized because the arresting officers had neither a search warrant nor an arrest warrant.

(3) That he was taken to the police station and questioned about crimes which he knew nothing about.

(4) That he was not told of his rights to remain silent or to consult with an attorney and that he was questioned at length without being able to call an attorney.

The Court will thoroughly consider this petition and the entire record to determine whether habeas corpus relief can be granted on any ground asserted. Petitioner's grounds (3) and (4), above, will be discussed first because evidentiary matters need not be considered in disposing of these allegations as grounds for habeas corpus relief.

*Petitioner's Ground (3):* Petitioner's assertion that he is now illegally confined because he was taken to a police station and questioned about crimes of which he knew nothing fails to meet the

Harold D. L. Henderson in pro. per.

Allow B. Crow, Jr., Asst. Atty. Gen., Austin, Tex., for respondent.

## MEMORANDUM OPINION

WOODWARD, District Judge.

Petitioner, Harold David Lee Henderson, filed his petition for writ of habeas corpus in this Court on November 14, 1969. Show Cause Order was issued

threshold requirement for habeas corpus relief:

■ The conviction sought to be set aside must be predicated to some degree on the matters alleged as grounds for relief. United States ex rel. Orsini v. Reincke, 286 F.Supp. 974 (D.Conn.1968), aff'd., 397 F.2d 977 (2d Cir. 1968), cert. denied, 393 U.S. 1050, 89 S.Ct. 689, 21 L.Ed.2d 692 (1969). Petitioner has not alleged, nor does the record reveal, that this questioning contributed in any manner to the conviction he attacks by this petition.

■ This ground, therefore, is not relevant to this proceeding and utterly fails to invoke the Court's habeas corpus power and must be dismissed. 28 U.S.C. §§ 2241 and 2254.

■ *Petitioner's Ground (4):* Petitioner's claims for habeas corpus relief because he was not told of his rights to remain silent or to consult with an attorney are also insufficient to invoke the Court's power. The petitioner must allege not only that his Constitutional rights have been violated by certain acts or facts; he must further allege that he was prejudiced at trial by the acts or facts which support the ground under which he seeks relief. Kayton v. Wainright, 402 F.2d 471 (5th Cir. 1968). Although petitioner had the right to be told that he could remain silent or could consult an attorney, he has failed to allege that any admissions, confessions, testimony, or other evidence obtained in violation of those rights contributed to or resulted in his conviction. Such failures result in a defective ground for which the proper disposition is dismissal. Kayton v. Wainright, *supra.*

*Petitioner's Grounds (1) and (2):* Petitioner's other two grounds—illegal arrest and illegal search and seizure of damaging evidence—must be considered together because of the close interrelation, both legal and factual, between the arrest and the search and seizure. Obviously the combination of these grounds meets the threshold requirement of allegation of Constitutional violations which

resulted in conviction and confinement. It then becomes this Court's duty under the provisions of 28 U.S.C. §§ 2241 and 2254 to make the following determinations and take action as required by these determinations:

(1) Determine whether petitioner has "exhausted his State remedies" as that term is interpreted and applied in this Circuit. If his remedies have not been exhausted the Court will order dismissal as a matter of comity without prejudice to assert these grounds for relief in the proper State Courts. Powers v. Hauck, 399 F.2d 322 (5th Cir. 1968).

■ (2) If petitioner has exhausted his State remedies the Court must next determine whether there has been an adequate evidentiary hearing in the State Courts. If the Court concludes that there has not been such a hearing the Court must order that such a hearing be held to decide the factual disputes. Mason v. Hale, 395 F.2d 666 (5th Cir. 1968).

(3) If it is the Court's opinion that petitioner has been afforded an adequate evidentiary hearing at the State level, the final question for determination is whether the law was correctly applied to the facts found by the State Courts. If the Court concludes that the law was improperly applied, proper application must be made and relief granted accordingly. However, if it is the Court's opinion that the application of law by the State was correct, these grounds must be dismissed as being without merit.

### Exhaustion of State Remedies

The record shows that the petitioner submitted an application for writ of habeas corpus to the convicting Court, the 47th District Court of Potter County, Texas. In that action, Cause No. 13950, the application was denied on August 15, 1968, without an evidentiary hearing. The Court simply entered a brief "Findings of Fact and Conclusions of Law." Petitioner's application was then forwarded to the Texas Court of Criminal Appeals where it was denied without an

evidentiary hearing and without written opinion on October 4, 1968. Petitioner's application initiating this proceeding was submitted on November 14, 1969.

 Petitioner's grounds (1) and (2) were part of petitioner's application for writ of habeas corpus in the State Courts. Although the wording used by petitioner in the applications varies somewhat, it is apparent that he alleges the same in both—that violations of his Constitutional rights to be free from unlawful arrest and unreasonable search and seizure have caused him to be illegally confined by the State. For this Court to hold that petitioner has not exhausted his State remedies because of grammatical differences would be to place form over substance. Such would not serve the purpose of the federal Courts in habeas corpus proceedings, especially in view of the principle that a habeas corpus applicant cannot be held to the same standard of articulation as an attorney. Murray v. State of La., 347 F.2d 825 (5th Cir. 1965). Therefore, the requirements of exhaustion of State post-conviction procedures contemplated by 28 U.S.C. § 2254(b) and (c) and provided by Article 11.07 of Vernon's Ann.Texas Code of Criminal Procedure have been fulfilled. Carroll v. Beto, 379 F.2d 329 (5th Cir. 1967); Ex parte Young, 418 S.W.2d 824 (Tex.Cr. App.1967).

## Evidentiary Hearing

 The applicable federal statute has been interpreted as requiring the federal Court to grant an evidentiary hearing if "the merits of the factual dispute were not resolved in the State hearing." Townsend v. Sain, 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963); Mason v. Hale, 395 F.2d 666, 667, (5th Cir. 1968). However, the hearing in the State Courts need not be in a post-conviction proceedings. All that is required is that there must have been a "determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State * * * were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia * * *." 28 U.S.C. § 2254(d) (1966). In this case the record shows that the material factual disputes concerning arrest and search and seizure were resolved against petitioner in the trial Court hearing, out of the jury's presence, on his motion to suppress. The appeal of the sentence included claims of error in regard to this motion to suppress. Those claims were rejected by the Texas Court of Criminal Appeals after a thorough examination in Cause No. 40,702. Henderson v. State of Texas, 422 S.W.2d 175 (Tex.Cr.App.1967). After reviewing that opinion, as well as the entire record, this Court is of the opinion that:

(1) The merits of the factual dispute were resolved in the State Court hearing;

(2) The fact finding procedure employed by the State Court was adequate to afford a full and fair hearing;

(3) The material facts were adequately developed at the State Court hearing;

(4) The State Court had jurisdiction of the subject matter and the person of the applicant in the State Court proceeding;

(5) The applicant was represented in the State Court by adequate and competent court appointed counsel;

(6) The applicant received a full, fair, and adequate hearing in the State Court proceeding;

(7) The applicant was in all things afforded due process of law in the State Court proceeding;

(8) The factual determination and holding of the State Court is fairly supported by the record; and

(9) The petitioner, Harold D. L. Henderson, has failed to overcome the presumption that the determination of the State Courts is correct

in accordance with Title 28, United States Code, Section 2254(d).

### The Facts As Determined By the State Courts

The facts established by the State Court findings and supported by the evidence reveals that a cafe in Amarillo was burglarized after the close of business at about midnight on November 24, 1966. Missing from the building were coins from a cigarette machine and a "bowling machine." Also missing were a pair of vice-grip pliers, a file, and a pair of needle-nose pliers.

Two Amarillo police officers were patrolling on foot in an area in which the cafe was located in the early morning hours on the night of the burglary. They first noticed petitioner at shortly after 2:00 a. m. walking on a street within their patrol area. At that time the officers did not know of the burglary.

The officers' testimony before the trial Court on petitioner's motion to suppress was accepted by the State Courts as the true version of their encounter and the subsequent arrest and seizure of evidence. According to the officers petitioner appeared to be intoxicated when they first observed him at a distance because he was staggering as a drunk person would. They also noticed that he was carrying a large bag and that pliers were protruding from his clothing. When petitioner saw the officers he started to run but stopped when one of the officers shouted for him to "stop and wait a minute." After petitioner had stopped and as the officers approached him, they saw a pair of pliers sticking out of a rear pocket, a file sticking out of his front coat pocket and a large lump in his right front coat pocket which appeared to be either rocks or coins.

The officers could then determine that petitioner was not intoxicated as they had originally had reason to believe, at least not to the extent of requiring arrest on that ground. However, the circumstances under which this meeting had taken place—the late hour, the high crime rate in that area during those hours, the large paper sack carried by petitioner, the petitioner's obvious possession of two pair of pliers and a file, and a large bulge in petitioner's clothing that in the police officers' opinions could have been (and was) a quantity of coins—aroused in the officers the suspicion that petitioner was involved in a burglary. The officers then asked petitioner what he had in the sack to which petitioner replied, "Cigarettes." The petitioner held out the bag when one of the officers asked him if they could look in the bag. There were over twenty packs of cigarettes in the bag and $13.50 in quarters, dimes and nickels; denominations of coins which the training and experience of the officers indicated could have come from coin-operated vending machines.

The officers then questioned petitioner about his employment status and when, in their opinion, petitioner's response, considered in the totality of the circumstances and their personal knowledge of petitioner, was not satisfactory, he was placed under arrest for vagrancy and investigation for burglary. Subsequent examination of the contents of the large bulge in petitioner's pocket revealed eighty-one dollars in dimes and one nickel and one penny. Petitioner was indicted for burglary and at his trial all coins, both those in the bag as well as those in his pocket were introduced as evidence against him. The tools, two pair of pliers and a file, were identified by the owner of the burglarized cafe and were also used as evidence against petitioner. There is no doubt that State "would have been unable to prove its case" without this evidence or at least some of it. Henderson v. State of Texas, 422 S.W.2d 175, 176 (Tex.Cr. App.1967).

### The Merits

Petitioner contends that the conviction was invalid because he was illegally arrested and because he was illegally

searched and damaging evidence illegally seized. There are two categories of evidence involved; that which came to light before the officers placed petitioner under arrest and that which was discovered after the arrest was made. The former category includes the tools which were at all times visible to the officers and the contents of the bag which petitioner allowed the officers to inspect. The only evidence in the latter category are the concealed contents of the petitioner's pocket, the eighty-one dollars in dimes primarily.

The Texas Court of Criminal Appeals approved the trial Court's decision on the motion to suppress and affirmed petitioner's conviction. The appellate Court was convinced that, under the facts stated above, the arresting officers had probable cause to detain and search petitioner and that the arrest was authorized by an ordinance of the City of Amarillo. In other words, the State Courts held that correct legal principles sustained the lawfulness of the arrest, taking of evidence and the use of the evidence in petitioner's conviction. This Court is in agreement as the following application of law to the chronological sequence of events will show.

■ The officers, when they first saw petitioner at some distance on a city street had legitimate reason to believe that he was intoxicated. It is a violation of State law to be drunk in a public place. Therefore, it was the officers' duty to detain petitioner and if they concluded, with reasonable grounds, that he was indeed drunk, it would have been their duty to arrest him. · Daniels v. State of Texas, 387 S.W.2d 886 (Tex. Cr.App.1965). Upon stopping and closely observing petitioner, as was their duty, the police officers concluded that he was not drunk enough to justify arrest on that basis. The fact that he was not drunk did not render his detention for that determination unlawful where, as here, the officers had reason to believe that an offense was being committed in their presence.

Neither did the officers' duty to be alert to detect the commission of other crimes cease when they concluded that petitioner was not drunk enough to arrest. They had the continuing duty to use their innate senses as well as their training and experience to discover violations of laws they were sworn to enforce.

■ At this point visual observation of petitioner's outer clothing by the officers revealed the tools which he now claims were detected by an illegal search. Petitioner is misled—there had been no search of any kind at this point. In other words, "to observe that which is open to view is not generally considered a 'search'." Grimes v. United States, 405 F.2d 477, 478 (5th Cir. 1968). Even more in point, "mere observation does not constitute a search, as where the officer has good reason to believe that the fruits of crime are freely exposed on the suspect's property." Creighton v. United States, 132 U.S. App.D.C. 115, 406 F.2d 651, 652 (1968). Finally, "[i]t has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." Harris v. United States, 390 U. S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968). Clearly, as to the tools, there was no error in the denial of the motion to suppress. Creighton v. United States, *supra*.

■ As to the contents of the paper bag, petitioner gave the bag to the officers for their inspection when they asked if they could see it. Use of force or threats were not involved. The police officers had not placed petitioner under arrest at that time. Under similar circumstances in a hearing on motion to suppress evidence which had been given by the defendants to the law enforcement personnel during questioning but prior to their arrest, it was held that: "[A]n officer in performance of his duties temporarily may detain and question a citizen without placing him under

arrest; and that any incriminating evidence which comes to the officer's attention during such time may itself become the basis for effecting a valid arrest, and may be received in evidence against the accused." United States v. Brett, 290 F.Supp. 929, 932 (S.D.Tex.1966), aff'd., 377 F.2d 520 (5th Cir. 1967), cert. denied, 392 U.S. 945, 88 S.Ct. 2289, 20 L.Ed.2d 1407 (1968). On the basis of the *Brett* decision and related authorities, this evidence was properly introduced against petitioner.

 The foregoing discussion serves not only to show that prior to the arrest there was no search of petitioner and that all such evidence was admissible; it also serves to show that the arrest without a warrant was lawful. In order for an arrest without a warrant to be lawful it must be made with probable cause. The United States Supreme Court has held that "probable cause" for arrest without a warrant exists when facts and circumstances known to the officers are sufficient to warrant a prudent man in believing that defendant has committed or is committing an offense, Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), or which would warrant a man of reasonable caution in believing that an offense had been or was being committed, Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L. Ed.2d 327 (1959). The totality of the circumstances and the direct knowledge that tools of the type often used in burglaries were visible on petitioner's person and his possession of an unusually large number of coins and cigarettes would have warranted a reasonably cautious or prudent man in believing that the offense of burglary had been or was being committed. The arrest was lawful. Beck v. State of Ohio, *supra*; Draper v. United States, *supra*.

That category of evidence obtained after the arrest was also properly introduced in evidence against petitioner. Perhaps no general rule is more well-recognized in this area of the law than that a search incident to a lawful arrest may be made without a warrant.

United States v. Monroe, 205 F.Supp. 175 (D.C.La.1962), aff'd., 320 F.2d 277 (5th Cir. 1963), cert. denied, 375 U.S. 991, 84 S.Ct. 630, 11 L.Ed.2d 478 (1963). Further, officers may take possession of burglar tools or other proofs of guilt found upon arrest within the possession of an accused. Nicholson v. United States, 355 F.2d 80 (5th Cir.), cert. denied, 384 U.S. 974, 86 S.Ct. 1866, 16 L.Ed.2d 684 (1966). Therefore, because the arrest was legal, this type of evidence was also legal and was admissible. Martin v. United States, 301 F.2d 81 (5th Cir. 1962).

For these reasons, it is obvious to this Court, as it was to the State Courts, that this petition and the grounds asserted therein are totally without merit. The holding of the State Court is fairly supported by the record and the applicable law. Accordingly, this petition is in all things denied.