**Chester J. DOMBROWSKI, Petitioner,**

v.

**Elmer O. CADY, Warden, Respondent.**

No. 70–C–129.

United States District Court,
E. D. Wisconsin.

Dec. 2, 1970.

Davis, Kuelthau, Vergeront & Stover, by David E. Leichtfuss, Milwaukee, Wis., for petitioner.

Wm. A. Platz, Asst.Atty.Gen., for the State of Wis., Madison Wis., for respondent.

### DECISION and ORDER

MYRON L. GORDON, District Judge.

Mr. Dombrowski was convicted by a state court on July 18, 1968, of the first-degree murder of Herbert L. McKinney and presently is serving a sentence of life imprisonment in the state prison at Waupun. The petitioner's conviction was affirmed by the Wisconsin supreme court in State v. Dombrowski, 44 Wis.2d 486, 171 N.W.2d 349 (1969). In this petition for a writ of habeas corpus, Mr. Dombrowski contends that certain of the evidence used to convict him was acquired by infringement of his fourth amendment rights.

On the evening of September 11, 1967, the petitioner was involved in an automobile accident near Kewaskum, Wisconsin, while driving a rented 1967 Thunderbird automobile. A passing motorist gave him a ride into Kewaskum where the petitioner called the county sheriff's office to report the accident. Mr. Dombrowski returned to the accident scene accompanied by two deputy sheriffs. The deputies briefly searched the car and then had it towed to a garage in Kewaskum. The petitioner was taken to the sheriff's office in West Bend, Wisconsin, where he was placed under arrest for drunken driving.

Approximately two and one quarter hours after the petitioner's arrest, deputy William Weiss went to the garage in Kewaskum and, without a search warrant or Mr. Dombrowski's consent, inspected the inside of the Thunderbird, including the trunk area. There he found evidence which ultimately contributed to Mr. Dombrowski's conviction for murder.

Testimony at the trial disclosed that Mr. Dombrowski had told the arresting deputies several times that he was an officer with the Chicago police department. Deputy Weiss testified that he understood that metropolitan police officers always carried their service revolvers with them. On the basis of this belief, the deputy stated that he returned to the locked Thunderbird to look for the revolver.

In affirming the petitioner's conviction, a divided Wisconsin supreme court concluded that the inspection of the Thunderbird by deputy Weiss was not a "search", citing definitions found in Haerr v. United States, 240 F.2d 533 (5th Cir. 1957), and Edwards v. State, 38 Wis.2d 332, 156 N.W.2d 397 (1968). The majority concluded that deputy Weiss' inspection was made within a reasonable time after the car was towed to the garage, was done with the purpose of protecting Mr. Dombrowski's property (the service revolver), and was not made as part of a search for incriminating evidence.

In Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), the petitioner and his companions were arrested for vagrancy when they could give no satisfactory explanation of their activities. They were taken to a police station; their automobile, which was not searched at the time of the arrest, was driven to the station by a police officer and then towed to a garage. A little later, several police officers went to the garage and there searched the automobile without a warrant, finding evidence in the trunk that was ultimately used to convict the petitioner and the others for conspiracy to rob a federally insured bank.

In reversing the convictions, the supreme court stated, in part, at page 366, 84 S.Ct. at page 883:

"Our cases make it clear that searches of motorcars must meet the test of reasonableness under the Fourth Amendment before evidence obtained as the result of such searches is admissible. E. g., Carroll v. United States, 267 U.S. 132 [45 S.Ct. 280, 69 L.Ed. 543] (1925); Brinegar v. United States, 338 U.S. 160 [69 S.Ct. 1302, 93 L.Ed. 1879] (1949)."

The court continued at page 367, 84 S. Ct. at page 883:

"The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest."

The respondent relies on Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). In *Harris*, the petitioner's automobile was seen leaving the scene of a robbery; the vehicle was traced and the petitioner was arrested when he was seen entering it near his home. Following a quick search of the car, the arresting officer took the petitioner to the police station and the automobile was impounded as evidence.

A police department regulation required the search of all impounded vehi-

cles, the inventory and removal of all valuables from them, and the attachment of a property tag detailing the circumstances of the impounding. As the arresting officer opened the passenger's door on the petitioner's automobile, he saw a registration slip belonging to the robbery victim on the metal strip over which the door closed.

The court held that the discovery of the registration slip was not the result of a search. Noting that "the discovery of the card was * * * the result * * * of a measure taken to protect the car while it was in police custody", the court went on to state that "Nothing in the Fourth Amendment requires the police to obtain a warrant in these narrow circumstances." Other cases with similar holdings are Creighton v. United States, 132 U.S.App.D.C. 115, 406 F.2d 651 (1968), and United States v. Blackburn, 389 F.2d 93 (6th Cir. 1968).

In Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1968), the defendant's automobile was impounded following his arrest on a narcotics charge. About a week later, the automobile was searched without a warrant for narcotics. The court found no illegality in the search on the basis that the police had lawful custody of the car and the search was closely related to the reason for the arrest and the reason the automobile had been impounded. *Preston* was distinguished on the basis that in that case there had been no relationship between the arrest, the reason for the seizure of the vehicle, and the reason for the search.

In Williams v. United States, 412 F.2d 729 (5th Cir. 1969), the court stated at page 733:

"*Preston* and *Cooper* are somewhat difficult of analysis because they represent two distinct approaches to the same kind of case. In *Preston,* the Court tacitly assumed, probably because of the way the case was argued, that the search would be unlawful if not incident to arrest. On the basis of the conclusion that '[o]nce an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest,' 376 U.S. at 367, 84 S.Ct. at 883, the search was held unlawful. In *Cooper,* on the other hand, it could not even be argued that the search was incident to a valid arrest, but rather than confine its attention to that question, as it had done in *Preston,* the Court went on to consider the reasonableness of the search under all the circumstances. As we read the opinion, the Court held that any warrantless search is to be judged by its reasonableness under all the circumstances. In taking this approach, the Court adopted as its test a dictum from United States v. Rabinowitz, 1950, 339 U.S. 56, 66, 70 S.Ct. 430, 435, 94 L.Ed. 653: 'The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable' (quoted in *Cooper* at 386 U.S. 62, 87 S.Ct. 791)."

In my opinion, *Harris* is reasonably analogous to the case at bar. Deputy Weiss testified that it was his department's "standard procedure" to look for a service revolver in a situation like the one presented. Deputy Boudry also testified that he had looked for the missing gun at the scene of the accident. Although the line is a narrow one, I conclude that the examination of the car at the garage was not a search in the *Preston* sense, but rather it was an inspection designed to locate an article of value, to be protected by those responsible for its custody. This was not a search for incriminating evidence and is constitutionally permissible under *Harris*.

Under the circumstances of the case at bar, I conclude that the examination of the Thunderbird by deputy Weiss was reasonable. At the time of this inspection, it appears that there was no suspicion on the part of the officers of any other misconduct by the defendant; the deputy was interested in protecting the petitioner's property. In seeking to lo-

cate the service revolver, the deputy came upon blood-splattered articles which he could not be expected to ignore; this distinguishes the case at bar from the case in which the officers, under a guise of making a belated "custody search", attempt to buttress their having arrested the defendant. See my dissent in State v. Stevens, 26 Wis.2d 451, 465, 132 N.W.2d 502, 509 (1965).

The petitioner also advances various other grounds, none of which reaches such constitutional proportions to warrant granting of the writ.

Therefore, it is ordered that Mr. Dombrowski's petition for a writ of habeas corpus be and hereby is denied.